Turley, J.
delivered the opinion of the court.
The prisoner was convicted of the offence of larceny in the Circuit Court of Washington; and amotion for a new trial having been overruled, he prosecuted an appeal in the nature of a *11 writ of error to this court. It appears, from the bill of exceptions, that the prisoner was convicted upon the testimony of one William Pursell, an accomplice in the commission of the crime. Upon his examination, after having deposed to the guilt of the prisoner, which he established by direct and positive proof, he was permitted to state that the prisoner proposed to him to join with himself and some other individual and go to Thompson’s mill and steal corn, also to Martin Boyles’s, disguised, to procure his intoxication by means of whisky and laudanum, and then steal his money. Witness was also permitted to prove that prisoner in the same conversation said to him, that he would forge notes on dead men’s estates, and that he would give whisky and laudanum to one Sarah Ross, a white woman who had a mulatto child, and take the child and sell it as a slave. This proof was all of it objected to by the prisoner; but the objection was overruled by the Circuit Judge, upon the ground that the propositions and statements were made by the prisoner in the same conversation he had with the witness while he was committing the offence for which he is convicted. The bill of exceptions also shows that witnesses were examined as to the general character of William Pursell, for and against; and that the Judge charged the jury, “that when the testimony of a witness was impeached, by assailing his general character, and an equal or greater number of witnesses sustained his general character, with an equal or greater opportunities of knowing it, he stood before the jury as if he had not been impeached.” Now how does this case stand upon this statement of facts? The prisoner is convicted upon the unsupported testimony of an avowed accomplice, one who from his own admission was under indictment for stealing a horse collar, accused of stealing an axe, which he admits was found in his house, a witness whose general character was assailed by proof in the progress of the cause, and who in addition thereto was informed by the prosecutor in the present case, that if he would tell on Kinche-low, the prisoner, the prosecution against him should be stopped; that he would befriend him if he could; that he would not bring witnesses against him, and that no bill of indictment should be found against him. The Attorney General, upon the trial, *12 in substance, told him the same thing. Then here is a witness of established bad character, a thief by his own admission, in danger of punishment under the law, with the promises of pardon and freedom sounding in his ears as a reward for swearing against the prisoner, his general character assailed, brought forward to support an indictment, and there is no proof but his upon which it can be sustained. Standing in such a position, it was felt both by the court and prosecuting counsel, that a conviction was not to be expected, without some circumstances in support of his veracity; and for this purpose, the prisoner’s statements as to other contemplated crimes made in conversation with the witness while perpetrating the felony for which he was on trial, were permitted to be received. This we think was all wrong. It was the misfortune of the witness and the State, that his testimony should need corroboration; but surely no legal principle should have been violated in order to procure it. It is well settled, that no proof of the admission of one distinct substantive offence shall be received upon a trial for the commission of another; a fortiori shall not statements of an intention to commit it. The only tendency of such testimony necessarily is to prejudice the minds of a jury, as it can by no possibility establish or elucidate the crime charged. We can well see how a jury who in the case under consideration might have unhesitatingly refused to find a verdict against the prisoner upon the evidence of the witness confined within its legitimate scope, may have been misled by the proof of the utter baseness and want of principle as detailed against him. But in addition to all this, the court informed the jury that although the general character of the witness had been assailed, yet if it were sus - tained by an equal number of witnesses with equal opportunities jDf knowing, he stood before them unimpeached. The charge is erroneous. The character of a witness for veracity cannot be thus disposed of by balancing in a scale the number of witnesses deposing for or against him, together with their means of knowing his character. The fact that it is assailed by a single witness, casts a reproach upon it, and it then becomes a question to be decided upon by the jury like all other questions of fact, and is to be judged of not by the number of *13 witnesses, but by their respectability and intelligence, consistency and means of information.
We are therefore of opinion, that the judgment of the Circuit Court be reversed, and that the prisoner be remanded for a new trial.